<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MALIBU MEDIA, LLC, <br> *Plaintiff*, <br> v. <br> AMIRAM PELED, <br> *Defendant*. | Civil No.: 2:18-cv-00141-KSH-CLW <br><br> <u>**OPINION**</u> |

<u>**Katharine S. Hayden, U.S.D.J.**</u>

**I. <u>Introduction</u>**

This matter comes before the Court on the unopposed motion for default judgment (D.E. 20) pursuant to Fed. R. Civ. P. 55(b)(2) brought by plaintiff Malibu Media, LLC ("Malibu Media"), a creator and distributor of pornographic films, against defendant Amiram Peled ("Peled"). The Court has reviewed all submissions made in support of this motion and decides it without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons stated below, the motion is denied because Malibu Media has not sufficiently shown that Peled committed the complained of acts of infringement.

**II. <u>Background</u>**

Malibu Media, the owner of the copyrighted pornographic movies at issue in this case, alleges that Peled is a persistent online infringer of its copyrights. (D.E. 12 ("Amend. Compl.") ¶ 2.) Malibu Media labels him as such because his Internet Protocol

address ("IP address") was used to illegally distribute 19 copyrighted movies via the BitTorrent file distribution network ("BitTorrent"), a peer-to-peer filing sharing system used to distribute large amounts of data. (Amend. Compl. ¶¶ 2, 10, 23.; *see also* D.E. 12-1, Ex. A). Malibu Media further contends that its investigator, IPP International UG, established a direct Transmission Control Protocol ("TCP")/IP connection with Peled's IP address, and was therefore able to confirm that the IP address was used to download, copy, and distribute Malibu Media's works without authorization. (*Id.* ¶¶ 17-23.)[1] Because Malibu Media has identified Peled as the subscriber of the IP address, it asserts that it was Peled who illegally downloaded, reproduced, distributed, and displayed its films. (Amend. Compl. ¶¶10, 23.)

### III. Procedural History

On January 5, 2018, Malibu Media filed a complaint against John Doe Subscriber IP address 148.75.88.44, claiming damages for copyright infringement pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 1010 *et seq* ("Copyright Act"). (D.E. 1.) Malibu Media then used "proven IP address geolocation technology" which it claims has "consistently worked in similar cases" to trace the alleged acts of copyright infringement

---

[1] To distribute a large file, the BitTorrent protocol breaks the file down into many small pieces, which BitTorrent users exchange amongst themselves. Each of these small file pieces is assigned a unique "hash value." These hash values ensure that each small piece is properly routed amongst BitTorrent users as they engage in file sharing. The entire media file is also assigned a specific hash value. Malibu Media's investigator established a direct connection with Peled's IP address and downloaded one or more pieces of Malibu Media's files, as identified by their specific hash values, to confirm that an internet user at Peled's IP address had illegally maintained Malibu Media's content. (Amend. Compl. ¶¶ 12-21.)

to a physical address located within the District of New Jersey. (Amend. Comp. ¶ 5.) Malibu Media asserts that this geolocation technology "has proven to be accurate to the District level in over 99% of cases." (*Id.* ¶ 6.)

On January 24, 2018, Malibu Media moved for leave to serve a third-party subpoena on John Doe Subscriber's Internet Service Provider ("ISP"). (D.E. 5.) The ISP maintains internal logs, which record the date, time, and customer identity for each IP address assignment made by that IP. (D.E. 4 ("Pl. Motion for Leave to Serve a Third-Party Subpoena"), at pg. 5.) As a result, the ISP can use this information to identify the subscriber of a given IP address. Malibu's motion was granted on March 26, 2018 (D.E. 6) and on August 3, 2018, it filed an amended complaint naming Peled as the defendant-subscriber. (D.E. 12.)

On August 11, 2018, Peled was personally served with the summons and amended complaint at his home address in New Jersey. (D.E. 17.) Peled failed to answer, move, or otherwise respond. Malibu Media requested that default be entered against him on October 30, 2018 (D.E. 19) and it was entered the next day. Malibu Media filed this motion for default judgment on March 15, 2019 (D.E. 20) and served the motion for default on Peled by mail to his New Jersey address. (D.E. 20-1.)

**IV. Discussion**

    **a. Standard of Review**

The Court may enter default judgment under Fed. R. Civ. P. 55(b)(2) against a properly served defendant who does not file a timely responsive pleading. The "entry

of default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). In *Chanel, Inc. v. Gordashevsky*, Judge Kugler cited to Third Circuit precedent and wrote the authoritative opinion relied upon in this District, stating that in ruling on a motion for default judgment, the Court accepts the well-pleaded factual allegations in the complaint as true but "need not accept the moving party's legal conclusions or allegations relating to the amount of damages," and, further, the Court must "ascertain whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" 558 F. Supp. 2d 532, 535-36 (D.N.J. 2008) (citations omitted); *see also Comodyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

Prior to entering default judgment, the Court must be satisfied that it has subject matter and personal jurisdiction, that defendant was properly served, and that defendant failed to file an answer or otherwise respond to the complaint within 21 days, as provided by the Federal Rules. *See Baymont Franchise Sys., Inc. v. Shree Hanuman, Inc.*, 2015 WL 1472334, at *2, 3 (D.N.J. Mar. 30, 2015) (McNulty, J.); *see also Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18-19 (3d Cir. 1985); Fed. R. Civ. P. 12(a). Additionally, the Court must consider the following three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *see also Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 Fed. Appx. 519, 522 (3d Cir. 2006).

### b. Jurisdiction

Before entering default judgment against a party who has failed to plead or otherwise defend against a complaint, the Court has an "affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, L.L.C.*, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008) (internal citations omitted) (Greenaway, J.). 28 U.S.C. § 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Malibu Media has sued under the Copyright Act (Amend. Compl. ¶¶ 1, 4). Because the Act creates a cause of action in favor of the copyright owner for direct infringement, the Court has subject matter jurisdiction. 17 U.S.C. § 501. The Court also has personal jurisdiction over Peled. A person's "domicile, or home, constitutes the paradigmatic forum for the exercise of general jurisdiction. *Chanel, Inc. v. Matos*, 133 F.Supp.3d 678, 684 (internal quotations and citations omitted) (Simandle, J.). Peled is a resident of New Jersey and was personally served at his New Jersey residence. (Amend. Comp. ¶ 9.)

### c. Sufficiency of Proof of Service

"Before the Court can enter default judgment, it must find that process was properly served on the Defendant." *Teamsters Pension Fund of Phila.*, 2011 WL 4729023, at *2 (Simandle, J.) (citing *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985)). An individual defendant may be served by "delivering a copy of the summons and of the complaint to the individual personally[.]" Fed. R. Civ. P. 4(e).

Because Peled was personally served with a copy of the summons and complaint at his home on August 11, 2018, the Court finds that service was proper.

### d. <u>Sufficiency of Causes of Action</u>

In assessing whether the complaint states a legitimate cause of action, the Court accepts the well-pleaded factual allegations in the complaint as true, but "need not accept the moving party's legal conclusions or allegations relating to the amount of damages" and must "ascertain whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Chanel*, 558 F. Supp. 2d at 535-36 (citations omitted). A plaintiff asserting a claim for copyright infringement must establish "(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002) (citation omitted).

Malibu Media is the registered owner of the 19 copyrighted films it alleges Peled pirated via BitTorrent without its permission or consent. (Amend. Comp. ¶¶ 3, 10 22, 25 29, 30-32; D.E. 12-1.) And Malibu Media asserts that it relied on geolocation technology to identify Peled's IP address and trace it to an address in this District. (*Id.* ¶¶ 5-6.) However, the Court is concerned that, no matter how reliable the tracing technology is, Peled's status as the subscriber of the IP address is insufficient to prove that he was in fact the infringer of the copyrighted materials.

There are decisions in this District that hold a plaintiff's use of geolocation technology to identify a subscriber is sufficient to order default judgment in a copyright infringement case. And many of these cases involve this plaintiff, Malibu Media, pleading analogous facts—individual defendants purportedly illegally downloading pornographic films. *See, e.g.*, *Malibu Media, LLC v. Toshi Yamada*, 2019 WL 1586813, at *2 (D.N.J. Apr. 12, 2019) (Salas, J.); *Malibu Media, LLC v. Tsao*, 2016 WL 3450815, at *3 (D.N.J. June 20, 2016) (Arleo, J.) ; *and Malibu Media, LLC v. Deleon*, 2016 WL 3452481, at *3 (D.N.J. June 20, 2016) (Arleo, J.). But other district courts, here and outside the District of New Jersey, have evaluated the relevant technology, considered its limitations, and found comparable factual allegations insufficient to grant copyright owners' requests both for expedited discovery and default judgment.

In November 2018, Judge Royce Lamberth denied an adult movie producer's request for a Rule 26(f) subpoena to identify the owner of an IP address. *Strike 3 Holdings, LLC v. Doe*, 351 F. Supp. 3d 160 (D.D.C. 2018), *on appeal*, No. 18-7188 (Dec. 19, 2018). The plaintiff, like Malibu Media, had identified an infringing IP address and used the same type of geolocation technology to trace the defendant's address to the court's jurisdiction. However, unlike Peled, the defendant in that case was still anonymous. As a result, Judge Lamberth was therefore particularly concerned with the unnamed defendant's privacy and the danger of "having your name and reputation publicly—and permanently connected" to pornographic movie titles; however, he also took issue with the imprecise nature of the request (i.e., that the subpoena would not

necessarily identify a copyright infringer) and criticized the coercive nature of these types of lawsuits. In a scathing opinion, Judge Lamberth described Strike 3 as a "copyright troll," and accused it of using bad technology to support predatory litigation.

> This method is famously flawed: virtual private networks and onion routing spoof IP addresses (for good and ill); routers and other devices are unsecured; malware cracks passwords and opens backdoors; multiple people (family, roommates, guests, neighbors, etc.) share the same IP address; a geolocation service might randomly assign addresses to some general location if it cannot more specifically identify another. . . Simply put, inferring the person who pays the cable bill illegally downloaded a specific file is even less trustworthy than inferring they watched a specific TV show. *Id.* at 162.

He also criticized Strike 3's litigation strategy:

> [T]he copyright troll's success rate comes not from the Copyright Act, but from the law of large numbers. According to PACER, over the past thirteen months, Strike 3 has filed 1849 cases just like this one in courts across the country—forty in this district alone. . . . These serial litigants drop cases at the first sign of resistance, preying on low-hanging fruit and staying one step ahead of any coordinated defense. They don't seem to care about whether defendant actually did the infringing, or about developing the law. *Id.*

Preliminarily, Judge Lamberth found that Strike 3 had shown the good cause required for the Court to order discovery because using geolocation technology justifies a good-faith belief that the court had personal jurisdiction over the defendant. *Id.* at 162-163. However, applying the standard set forth by the Second Circuit in *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010), which requires a balancing of interests by the Court, and placing great weight on the anonymous defendant's expectation of privacy, he denied the motion for early discovery. *Id.* at 164. Judge Lamberth further reasoned that "Strike 3's request lacks the type of specificity the test

requires: that the request will identify a copyright infringer who can be sued." *Id.* at 164 (citations omitted). The court noted that Strike 3 could not withstand a 12(b)(6) motion; more extensive discovery would be required to establish that defendant actually did the infringing. "Strike 3's requested subpoena thus will not—and may never—identify a defendant who could be sued." *Id.* The name of the individual who subscribes to the IP address did not provide the *Strike 3* court with confidence that the subscriber downloaded the copyrighted material himself—as opposed to someone else with access to the network.

Judge Lamberth concluded his opinion with the following reprimand of the plaintiff-media company:

> Armed with hundreds of cut-and-pasted complaints and boilerplate discovery motions, Strike 3 floods this courthouse (and others around the country) with lawsuits smacking of extortion. It treats this Court not as a citadel of justice, but as an ATM. Its feigned desire for legal process masks what it really seeks: for the Court to oversee a high-tech shakedown. This Court declines. *Id.* at 166.

The Ninth Circuit relied on similar reasoning in *Cobbler Nevada LLC v. Gonzalez*, 901 F.3d 1142, 1145 (9th Cir. 2018), albeit the case involved neither adult films nor alleged "patent trolls." There, the plaintiff owned the copyright to a mainstream film, and identified the IP address that downloaded and distributed its movie via BitTorrent. *Id.* The defendant-subscriber operated an adult foster care home, where internet was accessible to numerous residents and visitors alike. The Ninth Circuit affirmed the district court's finding that plaintiff had not plausibly stated a claim for direct

infringement based solely on linking the IP address to its subscriber. *Id.* at 1146-47. The court explained:

> Although copyright owners can often trace infringement of copyrighted material to an IP address, it is not always easy to pinpoint the particular individual or device engaged in the infringement. Internet providers, such as Comcast or AT&T, can go so far as to identify the individual who is registered to a particular IP address (i.e., an account holder) and the physical address associated with the account, but that connection does not mean that the internet subscriber is also the infringer. The reasons are obvious—simply establishing an account does not mean the subscriber is even accessing the internet, and multiple devices can access the internet under the same IP address. Identifying an infringer becomes even more difficult in instances like this one, where numerous people live in and visit a facility that uses the same internet service. While we recognize this obstacle to naming the correct defendant, this complication does not change the plaintiff's burden to plead factual allegations that create a reasonable inference that the defendant is the infringer. *Id.*

The *Cobbler* court therefore concluded that the claims for copyright infringement were properly dismissed, because plaintiff had not alleged facts that were "above a speculative level." *Id.* at 1147. "Because multiple devices and individuals may be able to connect via an IP address, simply identifying the IP subscriber solves only part of the puzzle. A plaintiff must allege something more to create a reasonable inference that a subscriber is also an infringer." *Id.* at 1145.

Following *Cobbler*, Judge Ellis of the Northern District of Illinois dismissed a lawsuit filed by Malibu Media accusing a John Doe IP address subscriber of torrenting copyrighted works. *Malibu Media, LLC v. Doe*, 2018 WL 6446404 (N.D. Ill. Dec. 10, 2018) ("*Doe*"). The court found that Malibu Media had not "sufficiently tied Doe to the alleged infringing conduct to support a copyright claim" and dismissed the

complaint pursuant to Rule 12(b)(6). *Id.* at 3. The decision found that the ruling in *Cobbler* was not limited to situations where multiple residents and visitors could access an IP address. *Id.*

In this District, Judge Vazquez summarized the preceding cases and, persuaded by their reasoning, found that Malibu Media "will have to show something more than merely tying [d]efendant to an IP address in order to sufficiently establish copyright infringement." *See Malibu Media v. Park*, 2019 WL 2960146, at *3-6 (Vazquez. J.) ("*Park*"). He agreed with *Cobbler's* finding that the link between a subscriber and his IP address does not permit the inference that the subscriber is the infringer; quoting *Cobbler*, Judge Vazquez wrote that "[t]he reasons are obvious—simply establishing an account [through an ISP] does not mean the subscriber is even accessing the internet, and multiple devices can access the internet under the same IP address." *Id.* at *6 (quoting *Cobbler*, 901 F.3d at 1146-47). He further noted the evidentiary concerns raised by the *Strike 3* court—including "virtual private networks," "onion routing spoof IP addresses," and the danger that "a geolocation service might randomly assign addresses to some general location if it cannot more specifically identify another[.]" *Id.* Judge Vazquez recognized that technology's limitations inevitably burden the plaintiff seeking to identify an infringer, but concluded that "such that limitations do not relieve a plaintiff of alleging sufficient facts so that a court can reasonably infer that the named defendant is the actual infringer." *Id.* This Court finds Judge Vazquez's reasoning very persuasive.

This District offers another case where the judicial officer raised concerns. In another of its lawsuits, Strike 3 had requested a Rule 26(f) subpoena from Magistrate Judge Joel Schneider, who preliminarily ordered the parties to show cause why the court should not adopt and follow the decision of Judge Lamberth discussed above. *Strike 3 Holdings, LLC v. Doe*, 2019 WL 5446239, at *1 (*Strike 3 II*). Following a "deep dive into Strike 3's practices," Judge Schneider eventually denied the company's request for expedited discovery, agreeing with Judge Lamberth's ruling, but emphasizing a different reason for finding that good cause did not exist.

> Despite [Strike 3's] admitted lack of knowledge of who downloaded its works, whether the subscriber lives at the identified address, and who lives at the address, Strike 3's complaints unequivocally aver in conclusory fashion that the listed subscriber to the identified IP address directly infringed its copyrights…. Strike 3 makes these unequivocal averments even though it recognizes the subscriber may not have downloaded its works. *Id.* at 4.

Judge Schneider acknowledged that the court was not deciding a motion to dismiss, but denied Strike 3's request because the company did not plead a cognizable claim. *Id.* at 6. As pleaded, the complaint was futile; Strike 3 could not make out a prima facie claim of copyright infringement based solely on the connection between an IP address and its subscriber.

> Strike 3's complaints are devoid of facts sufficient to show it is entitled to relief from the named John Doe/IP subscriber. The only material fact pleaded in Strike 3's complaints is that the listed IP address is associated with the downloading of Strike 3's works and the John Doe is the subscriber of the address. All other material averments in Strike 3's complaints, e.g., that the John Doe subscriber downloaded Strike 3's works, are conclusory statements, not facts. If Strike 3's complaints are stripped of their conclusory statements, they are left with the notion that merely subscribing to an IP address that

downloaded copyrighted works is sufficient to make out a cause of action for copyright infringement. This is not sufficient. *Id.* at 7.

Judge Schneider acknowledged Strike 3's argument that it may not be able to identify the alleged copyright infringer without the requested discovery, but stated that "the fact that the law lags behind technology is not an ill the Court can cure." *Id.* at 9.

The Court adopts the reasoning in *Strike 3, Cobbler, Doe, Park,* and *Strike 3 II* and echoes Judge Vazquez's conclusion that "[Malibu Media] will have to show something more than merely tying Defendant to an IP address in order to sufficiently establish copyright infringement." *Park*, 2019 WL 2960146, at *6. Because Malibu Media has not made a sufficient showing to conclude that Peled in fact infringed its copyright, the Court denies the request for default judgment.[2]

## V. **Conclusion**

For the reasons set forth above, Malibu Media's motion for default judgment is denied. An appropriate order will be entered.

Dated: February 20, 2020

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.

---

[2] The Court need not reach any damages analysis because it has denied default judgment.